**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH ELLIS, AS THE CO-TRUSTEE OF THE ) | |
| NEIL H. ELLIS IRREVOCABLE INSURANCE ) | |
| TRUST – 2005, NO. 2 ) | |
| ) | Case No. |
| Plaintiff, ) | FILED: MAY 28, 2008 |
| ) | 08CV3083    PH |
| v. ) | JUDGE DARRAH |
| ) | MAGISTRATE JUDGE NOLAN |
| COVENTRY CAPITAL I LLC, ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT

NOW COMES Defendant COVENTRY CAPITAL I LLC., ("Coventry") by and through

its attorney, Rosa M. Tumialán and hereby petitions this Court under 28 U.S.C. §§ 1441 and

1446 to remove the above captioned matter to this Court.  gives notice that it has today removed

the above-captioned case to the United States District Court for the Northern District of Illinois

under.  Coventry states as follows in support:

1.      Coventry is a defendant in a civil action now pending in the Chancery Division of

the Circuit Court of Cook County, under case number 08 CH 5368.

2.      Plaintiff filed her original complaint on February 13, 2008, naming Coventry and

LaSalle Bank National Association as defendants.  No basis for removal existed at that time.

3.      Plaintiff filed an amended complaint on May 16, 2008 in which Coventry is the

sole named defendant.  A copy of the amended complaint is attached hereto as Exhibit A.

4.      Plaintiff's May 16 amendment rendered this case one subject to removal under

§ 1446(b).

5.      Coventry files this Notice within thirty days of receipt of the amended complaint

and less than one year after this case has pended, incompliance with § 1446(b).  A copy of this

Notice was filed contemporaneously with the Clerk of the Circuit Court of Cook County as required by § 1446(d).

6.      This Court has jurisdiction of the state action under the provisions of § 1332. The plaintiff is an Illinois resident. Coventry is a Delaware corporation with its principal place of business in Pennsylvania. The amount sought exceeds the $75,000 jurisdictional amount.

WHEREFORE, Defendant COVENTRY CAPITAL I LLC respectfully requests that this case be removed to this Court.

Respectfully submitted,

By:   */Rosa M. Tumialán*
       One of the Attorneys for Defendant

Terrence E. Kiwala ARDC #1476548
Michael C. Borders ARDC #61800620
Rosa M. Tumialán ARDC# 6226267
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606-7407
(312) 876-1700

Brian P. Brooks
Kyra A, Grundeman
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2008, I electronically filed the foregoing **Notice of Removal** using the CM/ECF system.  In addition, I served the foregoing **Notice of Removal** via U.S. Mail upon the following:

> Stephen B. Eisenberg
> Mark L. LeFevour
> Leahy, Eisenberg & Frankel, Ltd.
> 33 West Monroe Street
> Suite 1100
> Chicago, IL 60603

s/ Irina V. Frye

08CV3083  PH
JUDGE DARRAH
MAGISTRATE JUDGE NOLAN

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

08 MAY 16 PM 4:13

Elizabeth Ellis, as Co-Trustee of          )
The Neil H. Ellis Irrevocable              )
Insurance Trust – 2005, No. 2,             )          CLERK
                    Plaintiff,              )          DOROTHY BROWN
        vs.                                 )
                                            )     No.    08 CH 5368
                                            )
LaSalle Bank National Association and       )
Coventry Capital I LLC.,                    )
                    Defendants.             )

## NOTICE OF FILING

Terrence E. Kiwala                          Brian P. Brooks
Michael C. Borders                          Kyra A. Grundeman
Rosa M. Tumialan                            O'Melveny & Meyers, LLP
Dykema Gossett PLLC                         1625 Eye Street, N.W.
10 South Wacker Drive, Suite 2300           Washington, D.C. 20006
Chicago, Illinois 60606

    **PLEASE TAKE NOTICE THAT** on *May 16, 2008*, we filed with the Clerk of the
Circuit Court of Cook County, of *Plaintiff's Verified First Amended Complaint,* a copy of
which is attached hereto.

### PROOF OF SERVICE

    LaVerne M. Heiser, a non-attorney, on oath state that I served this notice by mailing a copy to the above
named parties listed above on *May 16, 2008* and depositing same in the US mail at 33 W. Monroe Street,
Chicago, Illinois 60603.

                                    *LaVerne M. Heiser*
                                    LaVerne M. Heiser

[X]  Under penalties as provided by law pursuant to
     Ill. Stat. Chap. 110 Sec. 1-109, I certified that the
     statements set forth herein are true and correct.

Stephen P. Eisenberg
Howard B. Randell
Mark L. LeFevour
James J. Sanders
Leahy, Eisenberg & Fraenkel, Ltd.
33 W. Monroe Street, Suite 1100
Chicago, Illinois 60603
Attorney No. 45875

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION

Elizabeth Ellis, as Co-Trustee of )
The Neil H. Ellis Irrevocable )
Insurance Trust-2005, No. 2 )
                                  )
          Plaintiff, )
                                  )
     v.                           )          No. 2008 CH 05368
                                  )
Coventry Capital I LLC            )
          Defendant. )

## VERIFIED FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2 by and through her attorneys, Leahy, Eisenberg & Fraenkel, Ltd., and for her Verified First Amended Complaint against Defendant, Coventry Capital I LLC, states as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.      Plaintiff, Elizabeth Ellis, is a Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2, ("Trust").  The Wilmington Trust Company is a Co-Trustee of the Trust.  On information and belief, the Trust is the beneficiary of a $30,000,000.00 life insurance policy ("the Policy") on the life of Neil H. Ellis ("Ellis").

2.      Defendant, Coventry Capital I LLC ("Coventry") is, on information and belief, in the business of securing the purchase and financing of life insurance policies for its clients. Coventry is, on information and belief, a foreign corporation with its principal place of business in Fort Washington, Pennsylvania.

3.    LaSalle Bank National Association ("LaSalle") is, on information and belief, a bank chartered and licensed under the laws of the United States and the laws of the State of Illinois with its principal place of business in Chicago, Cook County, Illinois.

4.    At all relevant times, Vincent Passananti was an insurance broker and agent who would solicit persons like Ellis to purchase high-benefit insurance policies with financing of the premiums provided by third parties.

5.    Prior to the transaction which is the subject matter of this case, Passananti solicited and arranged for the purchase of a $10,000,000.00 life insurance policy on Ellis' life. Coventry administered and acted as the servicing agent for the purchase of the $10,000,000.00 policy and the financing of its premium through LaSalle Bank. Upon the recommendation of Passananti, Ellis sold the $10,000,000.00 policy to a bidder. Ellis had little involvement with the purchase and sale of the Policy and the financing of its premium. Due to Passananti and Coventry's experience in the industry, Ellis relied on Passananti and Coventry to handle the details and complete the purchase, finance, and sale of the policy.

6.    In 2005, Passananti solicited Ellis to purchase a $30,000,000.00 life insurance policy ("Policy") on Ellis' life and acted as Ellis' agent in said purchase.

7.    Passananti advised Ellis that he would arrange all of the legal work and the financing of the premium. On information and belief, Coventry administered and acted as the servicing agent for purchase and financing of the Policy.

8.    Based on Passananti's representations, Ellis participated in the purchase of a $30,000,000.00 life insurance policy on his life and, as he had done with the $10,000,000.00 policy, relied on the expertise and experience of Passananti and Coventry in securing and financing the policy.

9.    On or about July 26, 2005, the Policy was purchased by the Trust, of which Elizabeth Ellis was a Co-Trustee and the Trust was designated as the beneficiary of the Policy.

10.    The Policy premium was financed by LaSalle Bank.  A copy of the Note and Security Agreement is attached hereto as Exhibit 1.

11.    The Note and Security Agreement was signed only by the Corporate Co-Trustee.

12.    Neither Ellis nor Plaintiff, as Co-Trustee, agreed to or executed the financing agreement.  In fact, Ellis and Plaintiff did not know that the Policy had been purchased on July 26, 2005 and were otherwise of the belief that the Policy had been financed and purchased on or about August 18, 2005.  As the Note provided that the Loan would become due 30 months from the Financing Date, Ellis and Plaintiff were of the belief that the Maturity Date was February 18, 2005.

13.    Upon information and belief, as a result of the financing provided by the Agreement, the premium for the Policy was paid through December 31, 2008.

14.    Ellis and the Trust first became aware of the Note's actual maturity date on or about January 29, 2008, when Coventry sent notification, via Federal Express, that the Agreement's maturity date was the previous day, January 28, 2008, that the loan was in default and that by February 12, 2008, Plaintiff was required to pay the outstanding balance of $3,921,112.16 or lose its rights in the Policy and be subject to foreclosure of the Policy.  At no time prior to that date did Plaintiff or Ellis receive a notice of premium due on the Policy.  A copy of the January 29, 2008 correspondence is attached hereto as Exhibit 2.

15.    On or about February 1, 2008, via Federal Express, Coventry sent notification that the Trust had until February 12, 2008 to cure the alleged default on the loan or Coventry would "foreclose upon and sell or otherwise liquidate the life insurance policy(ies) set forth on

Schedule A of the Agreement and proceeds thereof (the "Collateral") and/or use other legal remedies in order to satisfy your payment obligations under the Agreement, and you will be responsible for our costs, including attorney's fees, court costs and collection costs paid in connection with our foreclosure on the Collateral." A copy of the February 1, 2008 correspondence is attached hereto as Exhibit 3.

16.     Due to Coventry's failure to provide proper notice of the Note's maturity date, Ellis was unable to appropriate the funds necessary to satisfy the balance prior to February 12, 2008.

17.     On information and belief, Coventry initiated foreclosure of the Policy on or about February 13, 2008.

18.     By correspondence dated March 20, 2008, Coventry notified Plaintiff that the Policy was foreclosed upon and subsequently liquidated in order to satisfy the Trust's obligations under the Note. A copy of the March 20, 2008 correspondence is attached hereto as Exhibit 4.

## COUNT I
### (Breach of Fiduciary Duty)

1-18.     Plaintiff repeats and realleges paragraphs 1-18 as paragraphs 1-18 of Count I, as if fully set forth herein.

19.     On information and belief, Coventry received fees and commissions from both LaSalle and Plaintiff, whereby Coventry received a portion or percentage of fees and commissions that Plaintiff paid to Passananti in connection with the initial purchase of the Policy.

20.     Additionally, due to Coventry's experience in securing and financing life insurance policies, Ellis, Plaintiff and the Trust relied on Coventry's skill and judgment in

securing the Policy and administering the Loan, which included providing the Trust with proper notice of the loan's maturity date.

21.    Coventry owed Plaintiff a fiduciary duty to provide proper notice of the impending maturity date.

22.    By failing to provide the Trust with proper notice of the loan's maturity date and otherwise protect the Trust's beneficiary interest in the Policy proceeds, Coventry breached its fiduciary duty to Plaintiff.

23.    As a proximate and direct result of said breach, Plaintiff has suffered and will continue to suffer substantial damages in that Plaintiff has lost her $30,000,000.00 interest in the Policy and/or the cash surrender value of the Policy in an amount in excess of $50,000.00.

WHEREFORE Plaintiff, Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2, prays that judgment be entered in her favor and against Defendant, Coventry Capital I LLC, for an amount in excess of $50,000.00, together with any costs incurred, and for any other and further relief this Court deems just and proper.

## COUNT II
### (Violation of Illinois Consumer Fraud and Deceptive Business
### Practices Act, 815 ILCS 505/1, *et seq.*)

1-18.    Plaintiff repeats and realleges paragraphs 1-18 as paragraphs 1-18 of Count II, as if fully set forth herein.

19.    On information and belief, Coventry secured the lender for the policy premium and counsel to draft the Note.

20.    The Note's default provision provided as follows: "[u]pon your failure to make any payment when due ... we may ... take any other action with respect to the Policies,

including foreclosure and sale or change of beneficiaries, to realize the value therefrom." (Ex. 1, p. 2).

21.    By allowing LaSalle to assume ownership of a policy on the life of an individual in which it had no insurable interest, the default provision created a "wager" policy on Ellis' life. Wager policies on the life of another violate Illinois law and are contrary to public policy.

22.    Despite its knowledge that the Note contained a provision which created an illegal wager policy on Ellis' life, Coventry secured the Note to finance the Policy's premium and intentionally deceived Ellis, Plaintiff and the Trust into believing that the Note was a legal instrument.

23.    Additionally, after Ellis rejected the initial offer to sell the Policy, Coventry, despite knowing that Ellis, Plaintiff and the Trust were relying on Coventry to provide proper notice of the Note's maturity date, intentionally and deceptively failed to provide the Trust with proper notice of the maturity date.

24.    In failing to provide proper notice to the Trust, Coventry knew and intended that the maturity date would pass without the Trust's knowledge, thereby causing the Trust to default on the Loan, which allowed LaSalle to foreclose on and liquidate the Policy and disperse the proceeds of the liquidation between itself and Coventry.

25.    As Coventry is in the business of securing and financing life insurance policies and was receiving commissions to act as the servicing agent for the subject transaction, its deception of the Trust by intentionally securing a note with an illegal default provision and failing to provide proper notice of the maturity date was in the course of trade or commerce.

26.    As a result of the foregoing, Coventry violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.*

27.    As a direct and proximate result of Coventry's violation of the Illinois Consumer Fraud and Deceptive Practices Act, Plaintiff has suffered and will continue to suffer substantial damages in an amount in excess of $50,000.00, plus statutory attorney's fees, penalties and costs.

WHEREFORE Plaintiff, Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2, prays that judgment be entered in her favor and against Defendant, Coventry Capital I LLC, for an amount in excess of $50,000.00, together with any costs incurred for statutory attorneys fees and penalties, and for any other and further relief this Court deems just and proper.

**COUNT III**
**(Fraudulent Concealment)**

1-18.    Plaintiff repeats and realleges paragraphs 1-18 as paragraphs 1-18 of Count III, as if fully set forth herein.

19.    By knowingly and intentionally failing to provide the Trust with proper notice of the impending maturity date pursuant to the terms of the Note, Coventry knowingly concealed a material fact – the Note's maturity date.

20.    In concealing the maturity date, Coventry knew that the Trust was relying on Coventry to provide proper notice of the maturity date and intended to induce the Trust into failing to pay the maturity date balance by the maturity date.

21.    Coventry's knowing concealment of the maturity date caused the Trust to default on the Loan, which allowed LaSalle to foreclose on and liquidate the Policy.

22.    Upon information and belief, Coventry profited from said transaction by receiving commission and fees in connection with the foreclosure and liquidation of the Policy.

23.    Had Coventry provided the Trust with proper notice of the maturity date, Ellis would have paid the maturity date balance to ensure that the Note was not defaulted upon and that the Policy would not be foreclosed and liquidated.

24.    As a direct and proximate result of the Trust's reliance and Coventry's intentional concealment, which caused the subsequent default, foreclosure, and liquidation, Plaintiff has suffered and will continue to suffer substantial damages in an amount in excess of $50,000.00.

WHEREFORE Plaintiff, Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2, prays that judgment be entered in her favor and against Defendant, Coventry Capital I LLC, for an amount in excess of $50,000.00, together with any costs incurred, and for any other and further relief this Court deems just and proper.   Plaintiff also seeks punitive damages to the fullest extent permitted by law.

## COUNT IV
### (Unjust Enrichment/Disgorgement)

1-18.   Plaintiff repeats and realleges paragraphs 1-18 as paragraphs 1-18 of Count IV, as if fully set forth herein.

19.    Upon information and belief, Coventry, at the direction of LaSalle, effectuated the foreclosure and liquidation of the Policy, and profited from said transaction in receiving commission and fees in connection with the foreclosure and sale of the Policy.

20.    As a consequence of the acts set forth above, and to the extent that the sale of the Policy caused Plaintiff to lose its interest in the Policy and the beneficiaries of the Trust to lose their rights and interests in the Policy, Coventry was unjustly enriched at the expense and detriment of Plaintiff.

21.    The Plaintiff requests that Coventry be dispossessed of all funds received by Coventry related to the foreclosure and sale of the Policy.

WHEREFORE Plaintiff, Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2, prays that judgment be entered in her favor and against Defendant, Coventry Capital I LLC, for an amount in excess $50,000.00, with any costs incurred, and for any other and further relief this Court deems just and proper.

## COUNT V
### (Constructive Trust)

1-23.    Plaintiff repeats and realleges paragraphs 1-23 of Count I as paragraphs 1-23 of Count V, as if fully set forth herein.

24.    Coventry breached its fiduciary duty to Plaintiff by failing to provide the Trust with advance notice of the Note's maturity date.

25.    As a proximate result of Coventry's breach of its fiduciary duty, in failing to protect the Trust's beneficiary interest in the Policy proceeds, Coventry has caused Plaintiff to lose its interest in the Policy and the beneficiaries of the Trust to lose their rights and interests in the Policy.

26.    Coventry's abuse of confidence and/or violation of its fiduciary relationship allows for the imposition of a constructive trust.

27.    Plaintiff requests that this Court impose a constructive trust on the proceeds of the liquidated Policy, $3,993,000.00, against Coventry until the disposition of this case as the proper and necessary means to protect Plaintiff from suffering future undue harm and damages.

WHEREFORE, Plaintiff requests that this Court impose a constructive trust on said proceeds from the sale of the Policy, totaling $3,993,000.00, and for a declaration that

Defendant, COVENTRY CAPITAL, LLC, hold the proceeds of the sale of the Policy as a constructive trustee, and for such other relief as the Court deems just and equitable.

Respectfully Submitted,

Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2

By: _____

One of its attorneys

Stephen P. Eisenberg
Howard B. Randell
Mark L. LeFevour
James J. Sanders
Leahy, Eisenberg & Fraenkel, Ltd.
33 W. Monroe Street  Suite 1100
Chicago, Illinois 60603
(312) 368-4554
Attorney No. 45875
F:CASE\059808\12849\FIRST AMENDED COMPLAINT.doc

## VERIFICATION

I, Elizabeth Ellis, as Co-Trustee of The Neil H. Ellis Irrevocable Insurance Trust 2005, No. 2, being first duly sworn under oath, deposes and states that she has read the above and foregoing Verified First Amended Complaint and under penalties of law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct to the best of her knowledge.

_____
Elizabeth Ellis

LEAHY, EISENBERG & FRAENKEL, LTD.
Attorneys for Plaintiff
33 West Monroe, Suite 1100
Chicago, Illinois 60603
(312) 346-4554
Firm I.D. 45875

## NOTE AND SECURITY AGREEMENT

This Note and Security Agreement (this "Agreement") is entered into on 7/26/05, by and between THE NEIL H. ELLIS INSURANCE TRUST – 2005, PREMIUM FINANCE SUB-TRUST (sometimes "you" or the "Trust" in this Agreement) and LASALLE BANK NATIONAL ASSOCIATION (sometimes "we" or "us" in this Agreement). This Agreement states the terms of this loan (the "Loan") from us to you to finance certain insurance premiums. Please read this Agreement carefully and if you agree with the terms, please sign your name below.

*Promise to Pay and Payment Terms.* You promise to pay to the order of LaSalle Bank National Association at the address set forth below, or at such other address as LaSalle Bank National Association may designate, the principal amount of the Loan ("Amount Financed") as set forth below, plus interest accruing on the Amount Financed at the interest rate (the "Interest Rate") set forth on Schedule A from the Funding Date (as set forth on Schedule A) until the Maturity Date (as hereinafter defined) and other charges or fees, calculated as set forth below, in lawful money of the United States in immediately available funds on the Maturity Date. "Maturity Date" shall mean the date that is the earliest to occur of (i) the date set forth on Schedule A as the scheduled maturity date (the "Scheduled Maturity Date"), (ii) the acceleration of the maturity of the amounts due hereunder upon an Event of Default (as defined herein) in accordance with the provisions of this Agreement, (iii) the date on which the Loan is prepaid in full or (iv) the date on which an amount of death benefits under the Policies sufficient to repay the Loan in full is paid by one or more of the life insurance companies that issued the Policies. Until the Maturity Date, interest pursuant to this Agreement is computed on a 30/360 simple basis. This means that we apply the ratio of the annual interest rate over the number of days in a year assumed to consist of 360 days and twelve months of thirty (30) days, multiplied by the outstanding principal balance from the Funding Date through the Maturity Date. After the Maturity Date, we will earn interest on the unpaid balance of the Loan as of the Maturity Date at the Default Interest Rate (as defined below).

*Loan Proceeds.* The Amount Financed will be disbursed to (i) the life insurance companies listed on Schedule A to pay certain premiums on the life insurance policies listed on Schedule A (the "Policies") and (ii) satisfy certain expenses incurred by us relating to our procurement of insurance coverage maintained by us relating to the value of the Policies on and following the Maturity Date ("PFIC Coverage") as set forth on Schedule A.

*Origination Fee.* As of the date of this Agreement, we have received from you an Origination Fee (in the amount set forth on Schedule A). You agree that the Origination Fee is non-refundable.

*Total of Payments.* If you elect to pay to us the Amount Financed plus accrued interest as of the Scheduled Maturity Date (the "Scheduled Maturity Date Balance"), you will have paid to us an aggregate amount equal to the Total of Payments (including the Origination Fee), as set forth on Schedule A. Your cost of credit at an annual rate ("Stated Rate of Interest") will be the rate set forth on Schedule A.

*How we will apply payments.* We may apply your payment(s) in any order we choose, consistent with applicable law.

*Prepayment.* You may prepay the Amount Financed plus accrued interest in full or in part at any time prior to the Scheduled Maturity Date, provided that you shall pay to us a prepayment fee in an amount equal to the lesser of (i) six (6) months of interest on the amount of the prepayment which exceeds 20% of the Amount Financed, calculated at the Interest Rate, or (ii) the interest that would have accrued between the date of such prepayment and the Scheduled Maturity Date, calculated at the Interest Rate. Such prepayment fee shall not apply if the Amount Financed plus accrued interest is paid prior to the Scheduled Maturity Date as a result of (a) an amount of death benefits sufficient to repay the Loan in full becoming due and payable under the Policies or (b) the insurance company increasing the cost of insurance rates for one or more of the Policies (beyond the scheduled annual increase in rates) which increases the amount required to keep the Policies in full force and effect through the Scheduled Maturity Date.



*Payments.* You agree not to send to us payments marked "paid in full", "without recourse", or similar language purporting to limit our rights or to indicate our acceptance of a partial payment as full satisfaction of the amounts owed to us by you. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us.  All written communications concerning disputed amounts that include any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to LaSalle Bank National Association, c/o Coventry Capital I LLC, 7111 Valley Green Road, Fort Washington, PA 19034, attention: Legal Department, facsimile: (215) 402-8369, electronic mail: pfpcorrespondence@coventrycap.com.

*Relinquishment.* You may satisfy all of your payment and other obligations under this Agreement by relinquishing to us all of your right, title and interest in, to and under all Policies in writing on or before the Scheduled Maturity Date. In the event you relinquish your rights under the Policies in accordance with the foregoing sentence, you will not be entitled to recover any death benefits or other monetary benefits under or relating to such Policies.

*Covenants.* You hereby agree that so long as this Agreement shall remain in effect, the undersigned shall not create or suffer to exist voluntarily or involuntarily any lien, security interest, pledge, charge or encumbrance, or similar right or claim on or with respect to any of the Policies. If you are not a natural person, you hereby agree that so long as this Agreement shall remain in effect, unless we otherwise consent in writing: (i) you shall do or cause to be done all things necessary to preserve, renew and keep in full force and effect its corporate or other existence and the undersigned will not be revoked or divided, or distribute, sell, transfer, lease or otherwise dispose of (in one transaction or a series of transactions), all or substantially all of its assets (in each case whether now owned or hereafter acquired), or terminate, liquidate or dissolve and (ii) you shall not, directly or indirectly, by operation of law or otherwise, merge with, consolidate with, or otherwise combine with any entity, unless this Agreement is assumed by such entity pursuant to such merger, consolidation or other combination.

*Events of Default.* Upon your failure to make any payment when due, or your breach of any of your obligations under this Agreement, or your breach of any covenant, representation, or warranty in this Agreement, or your bankruptcy, general assignment for the benefit of creditors or failure to pay debts as they become due (each an "Event of Default") we may, if such Event of Default has not been remedied by you within fifteen (15) days after the occurrence of such Event of Default, at our option to the maximum extent permitted by law, (i) accelerate the maturity of this Loan, declare the Amount Financed, accrued interest and other amounts payable hereunder immediately due and payable and seek any and all other remedies available for the enforcement of this Agreement, at law, in equity or otherwise and (ii) in our sole discretion, (a) terminate the coverage under the Policies and demand the return of and receive from the insurer any amounts due to the owner thereof, (b) request a loan or other distribution on the Policies and (c) take any other action with respect to the Policies, including foreclosure and sale or change of beneficiaries, to realize the value therefrom. Notwithstanding the foregoing, the Amount Financed plus accrued interest and other amounts payable hereunder shall be automatically and immediately due and payable upon your bankruptcy, general assignment for the benefit of creditors or failure to pay debts as they become due. We may exercise the option to accelerate upon the occurrence of an Event of Default by you regardless of any prior forbearance. The rights and remedies provided herein shall be cumulative and not exclusive of any rights or remedies provided by applicable law or otherwise.

*Default Interest.* You agree that if any amounts due hereunder are not paid on the Maturity Date and you have not relinquished the Policies (in addition to any other interest, fees or expenses which may accrue as a result of such Event of Default), such unpaid amounts of the Loan will continue to bear interest at an interest rate equal to the lesser of (i) the Interest Rate plus 2% or (ii) the maximum amount permitted by law ("Default Interest Rate"). All interest that accrues on such unpaid amounts of the Loan at the Default Interest Rate shall be recourse to you and may be recovered from any of your assets (in addition to the Policies).

*Funding Date.* We will notify you of the Funding Date of this Agreement when we return a copy hereof to you (the Funding Date will be included in Schedule A), and you authorize us to complete Schedule A by filling in the Funding Date after the date you sign this Agreement. If you do not receive a completed copy of Schedule A with the Funding Date filled in within fifteen (15) days of the date of this Agreement, you agree to contact us. Otherwise, we will assume that you have received a completed copy of Schedule A.

## SECURITY INTEREST

To secure your payment and performance under the terms of this Agreement, you hereby give us a security interest in the following collateral (the "Collateral"):

— The Policies; and

— All other proceeds (if any and from any source) on the Policies.

This Collateral secures payment of all you owe on the Loan. It also secures your other obligations under this Agreement as the law allows. This loan is non-recourse, meaning that nothing else secures your obligations to us and that we will not seek to collect the amounts due hereunder other than from proceeds of such Collateral, except as provided above in the paragraph entitled "Default Interest" with respect to amounts owed due to the application of the Default Interest Rate to the Loan after the Maturity Date.

In connection with your grant to us of a security interest in the Collateral, you hereby authorize us to take, and agree that upon our request you will take or cause to be taken, all action necessary and/or reasonably requested by us to protect and perfect the security interest granted by you to us hereunder under all applicable law (whether pursuant to the Uniform Commercial Code or otherwise), which may include without limitation, your execution and delivery to us of such documents, agreements and forms as we may reasonably request, possibly including a policy account control agreement and related instructions pursuant to which an account will be created in your name to which the Policies will be credited and control of which will be granted to us that lasts until you satisfy all of your obligations to us hereunder on or before the Maturity Date (the "Security Interest Perfection Documents"). If you do not satisfy all of your obligations to us hereunder on or before the Maturity Date, these documents will give us the right and ability to foreclose upon the Policies in an effort to receive proceeds sufficient to satisfy such obligations.

3

## CONSENT TO APPOINTMENT OF AGENT

*Servicing Agent.* You acknowledge and agree that we have appointed Coventry Capital I LLC as our servicing agent under this Agreement (in such capacity, the "Servicing Agent"). You agree to follow the instructions and directions of the Servicing Agent under this Agreement until we notify you in writing to the contrary.

You agree to send all payments to us at:

LaSalle Bank National Association
Consumer Loan Servicing
4747 West Irving Park Road
Chicago, Illinois 60641

You agree to send copies of all notices and correspondence hereunder, other than any payments, to the Servicing Agent at:

Coventry Capital I LLC
7111 Valley Green Road
Fort Washington, PA 19034
Attention: Legal Department
Facsimile: (215) 402-8369
Electronic Mail: pfpcorrespondence@coventrycap.com

*Notification of Maturity.* You understand and acknowledge that the Servicing Agent may send written notice in advance of the Scheduled Maturity Date reminding you of your payment obligations under this Agreement (the "Servicing Agent Notice"). Any such Servicing Agent Notice will be sent to the address listed below your signature. To the extent that such address changes between the date you sign this Agreement and the Scheduled Maturity Date, you agree to provide us with notice of any such change within thirty (30) days. In connection with the delivery of the Servicing Agent Notice, the Servicing Agent may request that you provide advance written notice regarding whether you intend to repay the Amount Financed plus accrued interest and any other charges on the Scheduled Maturity Date or to relinquish the Policies.

*Hold Harmless.* To the fullest extent permitted by law, you agree to hold harmless the Servicing Agent and any of its affiliates, directors, officers, employees, shareholders, assigns, representative or agents (each such person being an "Indemnitee") for any loss, liability, damages or expenses (including reasonable attorneys' fees) (collectively, "Liabilities") suffered by virtue of acts or omissions or alleged acts or omissions arising out of such Indemnitee's activities, except to the extent any such Liability arises as a result of the gross negligence or willful misconduct of such Indemnitee.

## IF YOU FAIL TO PERFORM YOUR OBLIGATIONS

*We will take the Policies from you.* If you fail to pay the amounts due hereunder by the Scheduled Maturity Date, we will take the Policies from you (i.e., foreclose) by whatever methods are contemplated by the Security Interest Perfection Documents, and will send notices or instructions to the issuing insurance companies as to the change of beneficial ownership and designation of other beneficiaries of the Policies. We will send you a written notice of our activities in this regard.

*You will have to pay foreclosure and collection costs.* In the event that you fail to pay the amounts due hereunder on or before the Maturity Date and fail to relinquish the Policies, you will pay our costs, including attorneys' fees, court costs and collection costs paid in connection with our foreclosure on the Policies.

*We may liquidate the Policies.* We may surrender, sell or otherwise exercise rights under the Policies as the owner thereof if (i) you relinquish the Policies or (ii) you default and we foreclose upon the Policies. You

4

hereby agree that we may exercise in respect of the Policies, in addition to any other rights and remedies provided in this Agreement or the Security Interest Perfection Documents, all of the rights and remedies of a secured party on default under the Uniform Commercial Code as in effect in any applicable jurisdiction (whether or not the Uniform Commercial Code applies to the affected Policies) and also may, without notice except as specified below, sell or otherwise dispose of the Policies or any part thereof in one or more transactions for cash, on credit or for future delivery, and upon such terms as we may determine. You agree that, to the extent notice of disposition shall be required by applicable law (including the Uniform Commercial Code as in effect in any applicable jurisdiction), ten (10) days' prior written notice to you at the address set forth herein of the time and place of any sale is to be made shall constitute reasonable notification.

## YOUR REPRESENTATIONS, WARRANTIES AND COVENANTS

You promise that you have given to us, the Servicing Agent and the insurance companies issuing the Policies true and correct information in connection with this Agreement and the related transaction documents, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this Agreement. Upon request, you will provide us with documents and other information necessary to verify any item contained in this Agreement or that we may otherwise reasonably request.

## MISCELLANEOUS

*Use of Medical Information of Underlying Life.*  In the event that (i) you default under this Agreement and we take the Policies from you, or (ii) you relinquish the Policies to us in satisfaction of your obligations hereunder, the Servicing Agent may, in order to facilitate liquidation of the Policies, provide third parties certain of the information you supplied to us or that we have otherwise obtained in connection with the funding of this Loan with regards to each person whose life is insured under the Policies (each an "Underlying Life"). You hereby agree that so long as there is no expense to you, you shall cause each Underlying Life to consent to the sharing of such information by the Servicing Agent and its agents and employees, and you agree to reasonably cooperate with the Servicing Agent.

*Applicable Law.*  Federal law and Illinois law govern the terms of this Agreement whether or not you live in Illinois. This Agreement has been accepted by us in the State of Illinois and all credit under this Agreement is extended from Illinois. If any part of this Agreement is not valid, all other parts stay valid (except as noted in the Arbitration Clause). We do not intend to charge or collect, and you do not agree to pay, any charge or fee, that is more than the maximum amount permitted by applicable law. If you pay a charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal balance has been paid in full, any excess will be refunded to you.

*General Provisions.*  We may delay or forego enforcing any of our rights or remedies under this Agreement without losing them. You waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, you shall not be released from liability.

*Arbitration Clause.*  EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY AN ARBITRATION AND NOT IN COURT OR BY JURY TRIAL. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to this Agreement or any related or resulting agreement, transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. Any claim

5

or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. If you or we elect arbitration, you may choose any one of the following arbitration organizations and its applicable rules: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www. arb-forum.com), or JAMS, 1920 Main St., Ste. 300, Irvine, CA 92614 (www.jamsadr.com). You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration shall be conducted in the federal district in which you reside. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. Any arbitration under this arbitration clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Agreement. If any part of this arbitration clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

*Execution by the Trust.* It is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by Wilmington Trust Company, not individually or personally but solely as trustee of the Trust, in the exercise of the powers and authority conferred and vested in it as trustee, (b) each of the representations, undertakings and agreements herein made on the part of the Trust is made and intended not as personal representations, undertakings and agreements by Wilmington Trust Company but is made and intended for the purpose of binding only the Trust, (c) nothing herein contained shall be construed as creating any liability on Wilmington Trust Company, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties and by any person claiming by, through or under the parties hereto and (d) under no circumstances shall Wilmington Trust Company be personally liable for the payment of any indebtedness or expenses of the Trust or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Trust under this Agreement or any other document.

## HOW THIS AGREEMENT CAN BE CHANGED

This Agreement, the loan application and the Security Interest Perfection Documents contain the entire agreement between you and us relating to the transactions contemplated herein. Any change to this Agreement must be in writing and both you and we must sign it. No oral changes are binding.

6

## SIGNATURES

— Do not sign this Agreement before you read it.

— This is a binding legal document and you should seek legal, financial and tax advice before signing it.

— You are entitled to a completely filled-in copy of this Agreement (including the Funding Date) shortly after this Loan is funded.

— If you default in the performance of your obligations under this Agreement, we may foreclose on the Policies.

YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD THIS AGREEMENT IN ITS ENTIRETY, INCLUDING THE ARBITRATION CLAUSE ABOVE, AND AGREE TO THE TERMS OF THIS AGREEMENT. EXCEPT FOR THE COMPLETION OF THE FUNDING DATE ON SCHEDULE A OF THIS AGREEMENT, YOU ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN COPY OF EVERY DOCUMENT THAT YOU SIGNED IN CONNECTION WITH THIS TRANSACTION. YOU AUTHORIZE US TO COMPLETE THE FUNDING DATE ON SCHEDULE A HEREOF FOLLOWING YOUR EXECUTION OF THIS AGREEMENT.

The Neil H. Ellis Insurance Trust - 2005,          LaSalle Bank National Association
Premium Finance Sub-Trust

By: Wilmington Trust Company, Trustee

By: _____                     By: _____
Name:    Janel R. Havrilla                        Name:   Krista Lake
Title:     Financial Services Officer                Title:   Attorney-in-Fact

Address:
1100 North Market Street
Wilmington, DE 19890

Dated: 7/22/05

7

# COVENTRY
## CAPITAL

7111 Valley Green Road   Fort Washington, PA 19034-2209   877-836-8300   coventry.com

January 29, 2008

Neil H. Ellis Insurance Trust – 2005, Premium Finance Sub-Trust
149 Colonial Road
Manchester, CT 06045

Re:     Default Notice of PFP Loan Maturity – Loan ID #12070

Dear Borrower:

This letter is in reference to your loan with LaSalle Bank National Association evidenced by the Note and Security Agreement dated as of July 26, 2005 between Neil H. Ellis Insurance Trust – 2005, Premium Finance Sub-Trust and LaSalle Bank National Association (the "Note"). The outstanding balance of $3,921,112.16 was due on or before January 28, 2008 (the "Maturity Date").

As a result of your failure to pay the required amount prior to such time, your loan is now in default and unpaid amounts will continue to bear interest at an interest rate equal to the lesser of (i) the interest rate stated in the Note plus 2% or (ii) the maximum amount permitted by law. In the event that you fail to pay the amounts due under the Note, you will be required to pay our costs, including attorneys' fees, court costs and collection costs paid in connection with our foreclosure on the collateral securing your loan.

Please contact us immediately at (877) 296-1700 to arrange for repayment of the outstanding obligations under the Note.

Sincerely,

Coventry Capital
Servicing Agent





COVENTRY CAPITAL　　　711 Valley Green Road　　Fort Washington, PA 19034-2209　　877-836-8300　　coventry.com

February 1, 2008

Neil H. Ellis Insurance Trust – 2005, Premium Finance Sub-Trust
149 Colonial Road
Manchester, CT 06045

Re:　　Notice of Foreclosure of Collateral of PFP Loan—Loan ID #12070

Dear Borrower:

Reference is made to that certain Note and Security Agreement (the "Agreement") dated as of July 26, 2005 between Neil H. Ellis Insurance Trust – 2005, Premium Finance Sub-Trust and LaSalle Bank National Association (the "Secured Party"). The outstanding balance of $3,921,112.16 was due on or before January 28, 2008 (the "Maturity Date").

As a result of your failure to pay the required amount prior to the Maturity Date, your loan is now in default and unpaid amounts will continue to bear interest at an interest rate equal to the lesser of (i) the interest rate stated in the Note plus 2% or (ii) the maximum amount permitted by law.

You are hereby notified that in the event that you fail to pay the amounts due under the Agreement by FEBRUARY 12, 2008, we will foreclose upon and sell or otherwise liquidate the life insurance policy(ies) set forth on Schedule A of the Agreement and proceeds thereof (the "Collateral") and/or use other legal remedies in order to satisfy your payment obligations under the Agreement, and you will be responsible for our costs, including attorney's fees, court costs and collection costs paid in connection with our foreclosure on the Collateral.

Please contact us immediately at (877) 296-1700 to arrange for repayment of the outstanding obligations under the Note.

Sincerely,

Coventry Capital
Servicing Agent



EXHIBIT
3

## COVENTRY
### CAPITAL

7111 Valley Green Road     Fort Washington, PA 19034-2209     877-836-0300     coventry.com

March 20, 2008

VIA UPS

Elizabeth Ellis, Trustee
The Neil H. Ellis Irrevocable Insurance Trust – 2005 No.2
149 Colonial Road
P.O. Box 1270
Manchester, CT 06045

Re:     Accounting and Demand for Payment – PFP Loan ID No. 12070

Dear Trustee:

Reference is made to (i) the Note and Security Agreement, dated as of July 26, 2005 (the "Note and Security Agreement"), between The Neil H. Ellis Insurance Trust – 2005, Premium Finance Sub-Trust (the "Borrower") and LaSalle Bank, N.A. and (ii) the Settlor Non-Recourse Security Agreement, dated as of July 1, 2005 (the "Settlor Security Agreement" and together with the Note and Security Agreement, the "Agreements"), between The Neil H. Ellis Irrevocable Insurance Trust – 2005, No.2 (the "Settlor") and LaSalle Bank, N.A. Pursuant to the terms of the Agreements, the Borrower promised to pay LaSalle Bank, N.A. $3,921,112.16 on or before January 28, 2008 (the "Maturity Date") and the Settlor promised to pay certain amounts in the event of a default and foreclosure. We previously sent you notices concerning your payment obligations under the Note and Security Agreement at the following intervals: (i) seventy-five (75) days prior to the Maturity Date, (ii) forty-five (45) days prior to the Maturity Date, (iii) the Maturity Date; (iv) five (5) days after the Maturity Date and (v) fifteen (15) days after the Maturity Date.

As a result of your failure to pay the amounts due under the Note and Security Agreement, we foreclosed upon and subsequently liquidated the life insurance policy set forth on Schedule A of the Note and Security Agreement (the "Collateral") in order to receive proceeds sufficient to satisfy your obligations under the Agreements. A partial accounting is provided below:

| | |
|---|---|
| Proceeds from Sale of Collateral | $3,993,000.00 |
| Less:  Maturity Date Balance | $3,921,112.16 |
| Less:  Accrued Default Interest | $63,681.04 |
| Less: Partial Foreclosure Costs (Including Attorneys' Fees) and Expenses[1] | $21,360.50 |
| Shortfall Amount: | $13,153.70 |

---
[1] We will send you an invoice containing the remaining foreclosure costs and expenses when those amounts become available.

EXHIBIT 4



We hereby demand payment in the amount of $13,153.70 by certified check or wire within five (5) days of the date of this letter.

LaSalle Bank, N.A. and Coventry Capital I LLC retain their respective rights to exercise further legal remedies available to them in connection with your deficiency, including the right to engage collection services to pursue such rights and remedies. To the extent required by law or consistent with our normal policies in connection with delinquencies and foreclosures, we will report or continue to report your default, such foreclosure and your continuing failure to perform your obligations under the Agreements to credit reporting services and appropriate regulatory authorities.

Sincerely,

Coventry Capital I LLC

Josh May
Senior Counsel

Cc:     Stephen P. Eisenberg (via FedEx)

2