IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH ELLIS, as the Co-Trustee of the Neil H. Ellis Irrevocable Insurance Trust – 2005, No. 2, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COVENTRY CAPITAL I LLC, )<br>)<br>Defendant. )<br>)<br>) | Case No. 08 cv 3083<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This case concerns the foreclosure by Defendant on a non-recourse loan financing the premiums on a $30,000,000 life insurance policy purchased by the Neil H. Ellis Irrevocable Insurance Trust-2005, No. 2, of which Plaintiff, Elizabeth Ellis, is a Co-Trustee. The case was removed to this Court from the Circuit Court of Cook County, Illinois. Pending before the Court are: Defendant's Motion to Dismiss and Compel Arbitration (Doc. 14) and Plaintiff's Motion for Remand (Doc. 19). For the reasons stated below, Plaintiff's Motion to Remand is denied; Defendant's Motion to Dismiss and Compel Arbitration is granted.

## BACKGROUND

The following background facts are derived from Plaintiff's Verified First Amended Complaint.

Plaintiff, Elizabeth Ellis, is the Co-Trustee of the Neil H. Ellis Irrevocable Insurance Trust-2005, No.2 (the "Trust"). Prior to the transaction at issue in this case,

1

insurance broker and agent Vincent Passananti solicited Neil Ellis ("Ellis") for the purchase of a $10,000,000 insurance policy on Ellis's life. Defendant Coventry Capital I LLC ("Coventry") is in the business of securing the purchase and financing of life insurance policies. Coventry administered and acted as the servicing agent for Ellis's purchase of the $10,000,000 policy and the financing of its premium through LaSalle Bank ("LaSalle"). Upon the recommendation of Passananti, Ellis sold the $10,000,000 policy to a bidder. Ellis had little involvement with the purchase and sale of the policy and financing of its premium. Due to Passananti's and Coventry's experience in the industry, Ellis relied on Passananti and Coventry to handle the details and complete the purchase, finance, and sale of the policy.

In 2005, Passananti solicited Ellis to purchase a $30,000,000 insurance policy on Ellis's life and acted as Ellis's agent in the purchase. Passananti advised Ellis that he would arrange all of the legal work and the financing of the premium. Plaintiff alleges, on information and belief, that Coventry administered and acted as the servicing agent for the purchase and financing of the $30,000,000 policy. She further alleges that Ellis participated in the purchase of the $30,000,000 policy based on Passananti's representations and, as he had done with the $10,000,000 policy, relied on the expertise and experience of Passananti and Coventry in securing financing for the $30,000,000 policy.

On or about July 26, 2005, the $30,000,000 policy was purchased by the Trust, and the Trust was designated as the beneficiary of the policy. The policy premium was financed by LaSalle pursuant to a Note and Security Agreement executed on

July 26, 2005. The Note and Security Agreement, attached as Exhibit 1 to Plaintiff's Complaint, was signed by the corporate co-trustee of the Trust. Neither Plaintiff nor Ellis executed the financing agreement. Plaintiff alleges that neither the Trust nor Ellis knew that the policy had been purchased on July 26, 2005, but were of the belief that the policy had been financed and purchased on or about August 18, 2005, and that the maturity date was thirty months from that date, or February 18, 2008.[1]

Plaintiff alleges the Trust first became aware of the Note's actual maturity date on or about January 29, 2008, when Coventry sent notification, via Federal Express delivery, that the security agreement's maturity date was the previous day, January 28, 2008, that the loan was in default and that by February 12, 2008, Plaintiff was required to pay the outstanding balance of $3,921,112.16 or lose its rights in the policy and be subject to foreclosure. At no time prior to January 29, 2008 did Plaintiff or Ellis receive a notice of premium due on the policy.

On or about February 1, 2008, Coventry sent notification via Federal Express that the Trust had until February 12, 2008, to cure the alleged default on the loan or Coventry would "foreclose upon and sell or otherwise liquidate" the policy. Ellis was not able to appropriate the funds necessary to satisfy the balance prior to February 12, 2008, and Coventry initiated foreclosure. On March 20, 2008, Coventry notified Plaintiff that the policy was foreclosed upon and subsequently liquidated in order to satisfy the Trust's obligations under the Note.

---

[1] The Court assumes the date of February 18, 2005, stated in the Complaint, is a typographical error and that the date of maturity is February 18, 2008.

3

Plaintiff initiated legal action against Coventry and LaSalle in state court. On February 13, 2008, Plaintiff filed a complaint for injunctive relief against LaSalle and Coventry. LaSalle and Coventry filed a motion to dismiss the action, contesting Plaintiff's request for injunctive relief and seeking dismissal of the complaint on the basis of an arbitration clause in the Note and Security Agreement. A hearing was held in state court on May 12, 2008. (Pltf. Ex. 1.) In this hearing, Plaintiff conceded that her claims against LaSalle were required to be arbitrated but argued that the arbitration clause contained in the Note and Security Agreement did not apply to Coventry, as non-signatory to the Agreement. The state court granted a motion to dismiss Plaintiff's complaint but granted Plaintiff leave to amend the complaint. (Pltf. Exs. 1, 9.)

On May 16, 2008, Plaintiff filed an amended complaint, alleging five causes of action only against Coventry: breach of fiduciary duty (Count I); violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. (Count II); fraudulent concealment (Count III); Unjust Enrichment/Disgorgement (Count IV); and Constructive Trust (Count V). Coventry removed the case to federal court, filing a notice of removal on May 21, 2008, and a Corrected Notice of Removal on May 29, 2008. Coventry asserts federal jurisdiction on the basis of diversity of citizenship in that Plaintiff's amended complaint did not name the nondiverse LaSalle as a defendant. Coventry asserts that jurisdiction is proper in that there is now complete diversity between the parties, and the amount in controversy exceeds $75,000. Plaintiff moves to remand the action to state court, and Coventry moves to dismiss the case and compel arbitration.

## ANALYSIS

### *Plaintiff's Motion to Remand*

Plaintiff's motion to remand will be addressed first as it pertains to the Court's jurisdiction to hear the case. As noted above, this case was removed by Coventry on the basis of diversity. Pursuant to 28 U.S.C. § 1332(a), district courts have original jurisdiction over all civil actions where there is complete diversity of citizenship; that is, no plaintiff is a citizen of the same state as any defendant, and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a).

Plaintiff makes several arguments as to why the case should be remanded to state court. First, Plaintiff argues the case should be remanded because Coventry takes the position, in its motion to dismiss and compel arbitration in this matter, that the court lacks subject-matter jurisdiction over the action on the basis of an arbitration clause contained in the Note and Security Agreement. According to Plaintiff, this constitutes a "judicial admission" by Coventry that this Court lacks subject-matter jurisdiction over the case. (Pltf. Mot. to Rem. at 4.) This argument lacks merit. Federal removal jurisdiction is invoked by Coventry on the basis of diversity of citizenship. If proper diversity jurisdiction exists, a federal court has jurisdiction to determine whether a controversy is subject to an arbitration agreement, even where a party has moved to compel arbitration and has thus asserted that the court is deprived of subject-matter jurisdiction during the pendency of arbitration. *See Falbe v. Dell, Inc.*, Case No. 04 cv 1425, 2004 WL 1588243 (N.D. Ill. July 14, 2004). Coventry's argument in support

5

of its motion to dismiss and compel arbitration is not a "judicial admission" that the Court lacks diversity jurisdiction to determine whether an arbitration agreement applies. Thus, the case will not be remanded on the basis of judicial admission that the Court lacks subject-matter jurisdiction.

Next, Plaintiff argues removal was untimely because Coventry did not file a notice of removal within thirty days from the date Plaintiff sought leave in state court to file an amended complaint dropping LaSalle as a defendant in the case. According to Plaintiff, the thirty-day period for filing a notice of removal began to run on April 21, 2008, when Plaintiff sought leave in state court to file an amended complaint dropping LaSalle as a defendant.[2] However, as this Court has previously held, the thirty-day period for removal does not begin to run until a request for leave to amend a complaint providing a basis for federal jurisdiction is *granted*, not from the time a motion for leave is made. Otherwise, a party would be attempting to remove a case before such time as it is certain that a basis for removal exists. *See Radasweski v. Garner*, No. 01 C 9551, 2002 WL 31430325, at * 2 (N.D. Ill. Oct. 21, 2002) (*Radasweski*) (citing *Sullivan v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998)). *Radasweski* applies here. A motion for leave to file a pleading is not a motion or pleading from which it may be ascertained that a case is one which has become removable under 28 U.S.C. § 1446(b) until such time as the motion for leave is granted.

---

2    The removal statute provides: "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

6

The state court did not grant Plaintiff's request for leave to amend its complaint until May 12, 2008, and the notice of removal was filed on May 28, 2008. Therefore, the notice of removal was not untimely.

Finally, Plaintiff argues Coventry has waived its right to remove the action to federal court based on its participation in the state-court proceedings.[3] Plaintiff argues that because Coventry moved to dismiss the action in state court on the basis of the arbitration provision in the Note and Security Agreement (and the state court denied this motion to dismiss), Coventry waived the ability to remove the case. Coventry disputes that its participation in the state-court proceedings constitutes a waiver of its removal rights. It asserts that at the time it made its motion to dismiss in state court, no ground for federal jurisdiction existed; thus, its actions in state court were of merely defending the case, which do not constitute waiver of the right to remove.

---

[3] Plaintiff argues in its motion the case should be remanded based on technical deficiencies in Coventry's removal papers: (1) that Coventry did not allege the citizenship of the parties but rather alleged their residency; and (2) Coventry did not attach to its removal papers "a copy of all process, pleadings, and orders" served upon it in the state proceeding as required by 28 U.S.C. § 1446(a). These in fact are technical deficiencies for proper removal. However, in that it is undisputed, and the filings of record before the Court now establish, that there is complete diversity of citizenship between the parties and all the materials required under 28 U.S.C. § 1446(a) have now been filed, the Court will not remand the action on the basis of these now-remedied technical deficiencies. *See, e.g., Rothner v. City of Chicago*, 879 F.2d 1402, 1412, n.10 (7th Cir. 1989) (recognizing that technical defects in the removal petition can be cured).

Coventry's position is persuasive. A defendant may waive the right to seek removal where the defendant takes action in state court that evinces an intent by the defendant to have the state court decide the case on the merits, such as by filing a motion to dismiss or asserting a counterclaim. *See Radasweski v. Garner*, No. 01 C 9551, 2002 WL 31430325, at * 2 (N.D. Ill. Oct. 21, 2002) (citing *Fate v. Buckeye State Mut. Ins. Co.*, 174 F. Supp.2d 876, 881 (N.D. Ind. 2001)). However, here, Coventry's basis for removal to federal court did not arise until there was diversity of citizenship between the parties. Coventry did not take any action in state court evincing an intent to waive its right to remove after this basis for federal removal jurisdiction arose. Thus, it cannot be said that Coventry's actions in state court constitute "a clear and unequivocal waiver" of the right to remove. *See Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik GMBH*, 579 F.Supp. 1476, 1479 (C.D. Ill. 1984) ("To constitute a waiver of the right to removal, there must be a clear and unequivocal waiver on the part of the defendant."). Accordingly, remand is not warranted on the basis of waiver.

Based on the pleadings and filings in the case, the Court finds that it has proper subject-matter jurisdiction pursuant to the diversity statute and that removal was proper in the case. Plaintiff's motion to remand is, therefore, denied.

*Coventry's Motion to Dismiss and Compel Arbitration*

This leaves Coventry's motion to dismiss and compel arbitration.

The Federal Arbitration Act ("FAA") provides that an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that the FAA embodies a broad federal policy favoring arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-226 (1987). The FAA generally requires a court to grant a motion to compel arbitration where the court finds: (1) "a written agreement to arbitrate," (2) "a dispute within the scope of the arbitration agreement," and (3) "a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

For purposes of determining subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court considers all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Bayer Cropscience, Inc. v. Limagrain Genetics Corp. Inc.*, No. 04 cv 5829, 2004 WL 2931284, at * 1 (N.D. Ill. Dec. 9, 2004).

Coventry moves to dismiss the action and compel arbitration on the basis of arbitration provisions contained in the transaction documents pertaining to the loan obtained by Plaintiff from LaSalle. In particular, the Loan's Note and Security Agreement contains the following arbitration clause:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute) between you and us or our employees, agents, successors or assigns, which arises out of or relates to this Agreement or any related or resulting agreement, transaction or relationship (including any such relationship with third parties who did not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Pltf. Complt, Ex. 1, at pp. 5-6.)

Coventry also submits the Settlor Non-Recourse Security Agreement pertaining to the transaction, signed by Plaintiff and LaSalle. (Def. Mot., Ex. E.) The Non-Recourse Security Agreement contains an identical arbitration clause to the arbitration clause contained in the Note and Security Agreement. (Cov. Mot., Ex. E, p. 4.) Finally, Coventry submits the Settlor and Co-Trustee Disclosure Statement and Acknowledgment, signed by Plaintiff as Settlor and Co-Trustee of the Sub-Trust. This Disclosure Statement contains the following arbitration clause:

> Except to the extent that any party shall seek equitable relief, all other disputes and controversies of every kind and nature between the Program Administrator and the Settlor, the Co-Trust or the Borrower arising out of or in connection with any of the Transaction Documents, including, but not limited to, its existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach, continuance, or termination thereof shall be submitted and settled by arbitration in accordance with the rules of the American Arbitration Association.

(Def. Ex. D, at ¶ 16.)

10

Coventry contends these documents establish that the parties agreed for Plaintiff's claims against Coventry to be resolved through arbitration. Plaintiff opposes Coventry's motion on the grounds that: (1) the claims alleged in this lawsuit are outside of the scope of the arbitration provisions contained in the transaction documents, and (2) Coventry cannot seek arbitration because it was a non-signatory to the Note and Security Agreement. Neither argument has merit.

"In deciding whether a particular claim comes within the scope of an arbitration agreement, the focus is on the factual allegations of the complaint." *Goldberg v. Focus Affiliates, Inc.*, 152 F.Supp.2d 978, 980 (N.D. Ill. 2001). "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650) (1986). "[O]nce it is clear the parties have a contract that provides for arbitration of some issue between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998).

The arbitration clause in the Note and Security Agreement clearly provides that the parties agreed to arbitrate all disputes "aris[ing] out of or relate[d]" to the Note and Security Agreement and "any related or resulting agreement, transaction or relationship." Plaintiff's alleged claims here all fall within the scope of this broad provision, as they all "arise out of" or are "related to" the Note and Security Agreement and the loan transaction.

11

Plaintiff attempts to argue that its claims are not within the scope of the arbitration clause because "Coventry's involvement predates the Note's execution on July 26, 2005." (Pltf. Opp. at 5.) Plaintiff explains that Coventry engaged in "pre-Note conduct" that "resulted in a fiduciary relationship between Coventry and the Trust." Therefore, Plaintiff reasons, its claims against Coventry for "breach of fiduciary duty arose prior to the execution of the Note." (Pltf. Opp. at 5-6.) Plaintiff's argument is not persuasive to show that the claims in this case are outside the scope of the arbitration clause. Even assuming Coventry engaged in conduct prior to the execution of the Note that established a fiduciary duty to Plaintiff, this does not show that Plaintiff's claims do not relate to the Note and loan transaction. Indeed, Plaintiff's claims are based on Plaintiff's allegations that Coventry failed to inform it – and in fact actively concealed from it – the maturity date of the Note so that Plaintiff defaulted on the Note and Coventry effectuated foreclosure and liquidation of the insurance policy. (*See* Complt., Counts I-IV.) This alleged conduct clearly constitutes a claim or dispute between Plaintiff and LaSalle's agent *relating* to the terms of the Note and the loan transaction, even if Coventry engaged in wrongful conduct prior to the execution of the Note. *See Goldberg v. Focus Affiliates, Inc.*, 152 F.Supp2d 978 (N.D. Ill. 2001) (*Goldberg*) (holding that claims of fraudulent inducement arise under terms of parties' merger agreement and thus came within the scope of the agreement's arbitration clause.). Accordingly, all of Plaintiff's claims fall within the scope of the language of the arbitration provisions.

Plaintiff's argument that Coventry cannot seek arbitration because it was not a signatory to the Note is also unpersuasive in the context of the facts presented here. As Coventry points out, the arbitration clause at issue is broad and applies to "any claim or dispute . . . between you and us or our employees, *agents*, successors or assigns, which arises out of or relates to this Agreement or any related or resulting agreement, transaction or relationship *(including any such relationship with third parties who do not sign this Agreement)*." (Emphasis added.) This language covers Coventry, which acted as LaSalle's servicing agent. Indeed, the transaction documents show that Plaintiff knew of and consented to the appointment of Coventry as LaSalle's agent. The Note and Security Agreement states:

> Servicing Agent. You acknowledge and agree that we have appointed
> Coventry Capital I LLC as our servicing agent under the
> Agreement . . . .You agree to follow the instructions and directions
> of the Servicing Agent under this Agreement."

(Note, at 4.) The Settlor Non-Recourse Security Agreement, which Plaintiff signed, similarly states:

> You acknowledge and agree that we have appointed Coventry Capital I
> LLC as our servicing agent (in such capacity, the "Servicer"). You agree
> to follow the instructions and directions of the Servicer under this
> Agreement until we notify you in writing to the contrary.

(Def. Ex. E., at 2.)

As this Court has previously held, an agent acting within the scope of his agency is entitled to invoke an arbitration agreement entered into by its principal. *Goldberg*, 152 F.Supp.2d at 982-83. Here, Plaintiff's claims all allege liability against Coventry based on conduct engaged in by Coventry as LaSalle's servicing agent. Thus, Coventry, as

13

LaSalle's agent, may compel Plaintiff to arbitrate even though it is not a signatory to the Note and Security Agreement. *See Goldberg*.

Relying on state-law cases, Plaintiff argues Coventry is not an agent able to enforce the arbitration clause because Coventry is not an agent of LaSalle "for all purposes." (Pltf. Opp. at 7.) Each of Plaintiff's cases recognized that a non-signatory to an arbitration agreement may seek arbitration under an agency theory, but each declined to allow a non-signatory to enforce arbitration where there was insufficient evidence of agency status. *See Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750 (Ill. App. 2000); *Ervin v. Nokia, Inc.*, 812 N.E.2d 534 (Ill. App. 2004); *Peach v. CIM Ins. Corp.*, 816 N.E.2d 668 (Ill. App. 2004).

Unlike Plaintiff's cases, there is sufficient evidence of agency status here. The transaction documents establish that Coventry was acting as LaSalle's servicing agent, and Plaintiff expressly acknowledged this agency in the Note and Security Agreement and the Settlor Non-Recourse Security Agreement. Although Plaintiff contends Coventry's agency was limited and Coventry did not have the power to "conduct legal transactions on LaSalle's behalf," (Pltf. Opp. at 8), Coventry indisputably acted as LaSalle's agent for purposes of administering the loan at issue, and Plaintiff's claims pertain to Coventry's actions in this capacity. These facts – and the broad language of the arbitration provisions – compel the conclusion that Coventry is entitled to enforce the arbitration clauses in this case, even though it was not a signatory to the arbitration agreement.

The elements requiring arbitration under the FAA are all present here. Thus, the Court is required to compel arbitration.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Remand (Doc. 19) is denied; Defendant's Motion to Dismiss and Compel Arbitration (Doc. 14) is granted. The parties are hereby ordered to submit this matter to arbitration. This case is dismissed pending arbitration.

Date: September 24, 2008

JOHN W. DARRAH
United States District Court Judge